UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| THE STATES OF CALIFORNIA, | ) | |
| DELAWARE, FLORIDA, ILLINOIS, | ) | Case No. 1:08-cv-02390 |
| INDIANA, MASSACHUSETTS, | ) | |
| NEVADA, NEW HAMPSHIRE, NEW | ) | Hon. George M. Marovich |
| JERSEY, NEW YORK, NORTH | ) | |
| CAROLINA, RHODE ISLAND, | ) | |
| TENNESSEE, VIRGINIA and THE | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| *ex rel*. JENNIFER D. PEREZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| STERICYCLE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF-RELATOR'S SECOND AMENDED COMPLAINT

## I.    INTRODUCTION

1.    This is a *qui tam* action brought by Relator Jennifer D. Perez ("Relator

Perez" or "Relator") on behalf of the United States of America and the States of California,

Delaware, Florida, Illinois, Indiana, the Commonwealth of Massachusetts, the States of Nevada,

New Jersey, New York[1], North Carolina, Rhode Island, Tennessee, the Commonwealth of

Virginia, and the District of Columbia (hereinafter the states will be referred to as the "Plaintiff

States") to recover treble damages and penalties arising from defendant Stericycle Inc.'s

("Stericycle") violations of the Federal False Claims Act, 31 U.S.C. §§ 3729-3730 and the

respective Plaintiff States' false claims statutes.

---

[1] Stericycle settled the New York claims for $2.4 million on January 7, 2013, and those claims
have been dismissed.  Claims under the New Hampshire False Claims Act are not included in
this Second Amended Complaint.

2. Stericycle collects and disposes of medical waste throughout the United States. Stericycle has defrauded the United States and the Plaintiff States (hereinafter the United States, Plaintiff States and their local governmental entities will be referred to as the "Government") by knowingly or recklessly: (a) submitting false claims; (b) making false statements in order to get false or fraudulent claims paid or approved; (c) knowingly concealing or improperly avoiding an obligation to pay or transmit money or property to the Government; and/or (d) fraudulently inducing the Government to enter into a contract knowing at the time the contract was entered into that it had no intent on honoring the terms of the contract but instead intended on arbitrarily increasing the price agreed upon in the contract by various amounts up to 18% every 9 to 12 months.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. §§ 3729 *et seq*. The Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §3730(b) in that the claims for relief in this action are brought in the name of the United States for violations of the federal False Claims Act, 31 U.S.C. §§ 3729- 3733. This Court has supplemental jurisdiction over the claims asserted under state law pursuant to 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b).

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

5. This suit is not based upon prior public disclosures of allegations or transactions in a Federal criminal, civil, or administrative hearing in which the Government is a party, in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation, or from the news media.

6.    Relator is an original source under 31 U.S.C. §3730(e)(4)(B). Relator voluntarily disclosed to the Government the information on which allegations or transactions upon which the claims are based, and has voluntarily provided the information to the Government before filing an action under the FCA.

7.    Relator served on the Attorney General of the United States, and the United States Attorney for the Northern District of Illinois, substantially all material evidence and information she possesses in accordance with the provisions of 31 U.S.C. §3730(b)(2). Relator also served on the Attorneys General of the Plaintiff States or their designated representatives, substantially all material evidence and information she possesses in accordance with the Plaintiff States false claims act *qui tam* provisions.

### III.    PARTIES

8.    Relator Perez is a citizen of the United States and a resident of Illinois. She was employed by Stericycle from 2004 until March 25, 2008, when her employment was terminated. Her last position prior to her termination was that of government specialist.

9.    Defendant Stericycle is a Delaware corporation with it principal corporate offices located in Lake Forest, Illinois. Since 1989, Stericycle has been and continues to be engaged in the business of providing medical waste disposal services throughout the United States.

10.    The disposal of medical waste is a regulated business. Regulated medical waste is commonly any waste that can cause an infectious disease and includes single-use disposable items such as needles, syringes, gloves, and other medical supplies; cultures and stocks of infectious agents; blood and blood products; and regulated pharmaceutical waste, which consists of expired or recalled pharmaceuticals.

## IV.   STERICYCLE'S STANDARD
## FORM "STERI-SAFE SERVICE AGREEMENT"

11.     The Steri-Safe Service Agreement is a standard form boilerplate contract drafted by Defendant.  The Steri-Safe Service Agreement consists of a cover sheet listing "Steri-Safe Program Benefits," fees, a line for the Government representative's signature, and a separate document titled "Steri-Safe Terms and Conditions."  A copy of a Steri-Safe Service Agreement entered into between the United States Department of Veterans' Affairs and Defendant is attached as Exhibit 1.

12.     The Steri-Safe Service Agreement's Terms and Conditions require Stericycle to collect, transport, treat, and dispose of regulated medical waste provided by the Governmental customer during the term of the agreement.

13.     The fee the Government agreed to pay for medical waste pickup and disposal is stated on the cover page of the Steri-Safe Service Agreement.

## V.   STERICYCLE'S UNLAWFUL
## "AUTOMATED PRICE INCREASE" POLICY

14.     From 2002 and continuing to present, Stericycle has imposed automated price increases ("API") of up to 18% during a calendar year on all Steri-Safe Service Agreement customers, as well as certain other customers, including Government customers.  Defendant imposed APIs at least or as often as  every nine months.  Stericycle never disclosed its API program to its Government customers and the API program was not authorized by Stericycle's form contracts.  APIs are never authorized increases to the agreed upon charge.

15.     Defendant's failure to disclose that it was its policy and practice to increase the contract price by the implementation of an API, prior to entering into a contract with the Government, fraudulently induced the Government to enter into these contracts.  Defendant

knew at the time it was entering into these contracts with the Government, that it had no intent on abiding by the terms of its agreement.

16.     Stericycle targeted small-quantity customers, including Government agencies and entities, with automated price increases.

17.     Stericycle used an electronic financial accounting and reporting system known as "Tower." Stericycle programmed the Tower financial reporting system to apply the API automatically to small-quantity Government customer accounts, and to some large-quantity accounts as well.

18.     In addition to the last price increase amount, the fields populated with data on Tower include, for example, "Last Price Inc[rease] Date," "PI [Price Increase] exempt," "PI [Price Increase] Max Amt (%)," "PI [Price Increase] Expire Date," and "PI [Price Increase] Reason Code." A screen shot from the Tower financial reporting system shows that a Lincoln, Nebraska Federal Aviation Administration ("FAA") facility was charged an API of 18% on October 1, 2007.


[Remainder of page left blank intentionally.]



19. Stericycle billed most small-quantity Government customers on a monthly basis.

20. While the vast majority of its Government customers paid the false claim containing the API, not all readily agreed to pay the false or fraudulent claim.

21. To respond to customer complaints, including Government customers, concerning price increases, Defendant maintained a customer complaint department intended to persuade customers, including Government customers, to pay as much of the 18% API as possible.

22. In the months that Stericycle implemented an API, this department routinely received a large number of complaints from Steri-Safe Service Agreement and other

small-quantity customers. To deal with the growing number of complaints from government customers, Relator was designated as the government specialist.

23.     Stericycle used various false statements to justify the API to Government customers who spoke with Defendant's customer complaint department.  When Government customers objected to the API, Stericycle employees were directed by Defendant to make false statements to the Government in order to get the false claims paid or approved.  These false statements included:

a.     Telling customers that Stericycle was experiencing annual increased costs for insurance, labor, energy, or regulatory requirements totaling as high as 30%, when their actual annual cost escalation was 3%.

b.     Telling customers that Stericycle   passed on only a fraction of increases to customers because the company tried to absorb as much as possible, but at times had to pass on some increases to customers.

24.     For Government customers that refused to pay the increased price, Defendant's customer retention department was authorized to offer a discount on the API.

## VI.     STERICYCLE'S FRAUDULENT CONTRACT INDUCEMENT SCHEME

25.     Relator's primary responsibility as Stericycle's government specialist was to resolve complaints from Government customers.  Relator addressed complaints from numerous governmental agencies, including but not limited to federal agencies such as the Defense Department (Army, Air Force, and Navy), Department of Veterans Affairs, Department of Justice (Federal Bureau of Investigation, laboratory services; Bureau of Prisons), Library of Congress, National Institute of Safety and Health, and the United States Postal Service.  Relator also fielded complaints from governmental units located in California (*e.g.,* California

Department of Justice), Delaware, Florida (*e.g.,* Department of Law Enforcement), Illinois, Indiana, Massachusetts, Nevada, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Virginia, the District of Columbia, and local governmental units in the foregoing states, such as health departments (*e.g.,* Lake County, Illinois, Health Department), schools (*e.g.,* Chicago Public School system), ambulance services (*e.g.,* Bristol, Tennessee, Fire and Rescue Squad), prisons and jails. Relator discovered that Stericycle was routinely submitting claims to Government customers that contained an API of 18%. This resulted in gross overcharges to the Government accounts.

26. The following are examples of specific false and/or fraudulent claims submitted by Stericycle to Government customers.

27. From October 1, 2004 to September 30, 2008, Stericycle had a Steri-Safe contract with the Federal Aviation Administration's facility in Lincoln, Nebraska, Stericycle account #1041033. This contract was renewed automatically at the end of each contract year with the price or charge locked in, and not subject to increase. Nonetheless, on November 1, 2005, Defendant imposed an API of 18%, increasing the charge from $26.00 to $30.68. Defendant thus submitted false claims to the Federal Aviation Administration, monthly, from November 1, 2005 to October 1, 2006, as stated herein.

28. On November 1, 2006, Defendant imposed another API of 18% on the Federal Aviation Administration's facility in Lincoln, Nebraska, Stericycle account #1041033, thus compounding the fraudulent billing and the damages to the Government. Although the monthly charge should have been $26.00, the price was increased to $36.20. ($26.00 x 18% [Nov.] 1, 2005, = $30.68 x 18% [Nov.] 2006, = $36.20). Defendant submitted false claims to

the Federal Aviation Administration, monthly, from November 1, 2006 to October 1, 2007, as stated herein.

29.     On November 1, 2007, Defendant imposed another API of 18% on the Federal Aviation Administration's facility in Lincoln, Nebraska, Stericycle account #1041033, thus compounding the fraudulent billing and the damages to the Government.  Although the monthly charge should have been $26.00, the price was increased to $42.72 ($26.00 x 18% [Nov. 1, 2005] = $30.68 x 18% [Nov. 2006] = $36.20 x 18%  [Nov. 1, 2007] = $42.72).  Defendant submitted false claims to the Federal Aviation Administration, monthly from November 1, 2007 to October 1, 2008, as stated herein.

30.     From 2002 through 2007, the United States Department of Veteran Affairs Medical Center in Kansas, Missouri, Stericycle Account # 1010644, had a "Steri-Safe Economy" contract with Stericycle, with fixed pricing during the pendency of the contract.  Nonetheless, Stericycle increased the charges to the VA on at least two occasions, each by imposing an 18% API.  The 18% API was imposed on June 1, 2006, and again on September 9, 2007.  As a result of these unauthorized increases, the monthly charge to the VA rose from $83.50 to $98.53, to $116.27, all in violation of the Federal False Claims Act.

31.     On or about January 1, 2011, Stericycle submitted a claim to the University of California-Davis (UCD) Medical Group, a state entity, located at 251 Turn Pike Drive, Folsom, California, that included an API of 18%. This 18% API charge was not permitted by the existing agreement between the UCD Medical Group and Stericycle, and was thus a false or fraudulent claim for payment in violation of the California False Claims Act.

32.     Stericycle had a Steri-Safe Select Monthly contract with the Florida Department of Law Enforcement ("FDLE"), at a fixed monthly price.  On September 1, 2005,

Stericycle submitted a claim to the FDLE for $1,493.67. After several 18% APIs, by July 1, 2007, Stericycle submitted a claim to the FDLE in the amount of $2,066.56. These APIs were not part of the contract that FDLE had with Stericycle, and were claims for payment well above the price Stericycle had agreed to with FDLE. Each claim submitted subsequent to an API was in violation of the Florida False Claims Act.

33.     On or about January 1, 2011, Stericycle submitted a claim to Oak Forest Hospital, 15900 S Cicero Ave, Oak Forest, Illinois, that included API of 10%. Oak Forest Hospital is part of the Cook County, Illinois Health and Hospital System.  This 10% API charge was not part of the existing agreement between Oak Forest Hospital and Stericycle, and was thus a false or fraudulent claim for payment in violation of the Illinois False Claims Act.

34.     Stericycle had a Steri-Safe Economy-Annually contract with the Massachusetts College of the Liberal Arts, a state college located in North Adams, Massachusetts.  The contract price as of October 1, 2004, was $20.70, for one unit per month from October 1, 2004 to September 1, 2005.  On October 1, 2005, Stericycle imposed an 18% API, raising the monthly unit price to $24.43, and charged this price for each month for the following year.  Stericycle, following this pattern, imposed an 18% API on each of October 1, 2006, October 1, 2008, and October 1, 2009, all billed monthly for a year's duration.  Each claim submitted subsequent to an API was a false or fraudulent claim in violation of the Massachusetts False Claims Act.

35.     On March 1, 2011, Stericycle imposed a 10% API upon Virginia Commonwealth University-Chem Clave, Richmond, Virginia.

36.     In addition to the specific false claims identified herein, the following Governments were fraudulently induced into entering into contracts with Defendant: Tennessee

Air National Guard; Delaware Veteran Home; Indiana Air National Guard; Tahoe-Douglas Fire Station, Nevada; New Jersey Department of Agriculture; North Carolina State Veteran Home; Rhode Island Public Transit Authority; Tennessee Air National Guard; Virginia Department of Health; and District of Columbia Department of Health.

37.     The foregoing are examples of the false or fraudulent claims submitted by Stericycle in violation of the federal and state False Claims Acts, and were submitted to the Government  without any notification of the price increases in order not to alert the Government, who might protest.  All APIs were done pursuant to Stericycle's scheme to fraudulently induce customers to contract with Stericycle, and to deceive them into paying fraudulent price increases. All such claims were presented to Stericycle's Government customers with the knowledge and approval of Stericycle's top executives including Chief Operating Officer Richard Kogler.

38.     The foregoing are representative examples of the hundreds of thousands of false claims Defendant submitted to the Governmental customers throughout the United States and in each state where Stericycle does business, including each of the Plaintiff States in this action.

39.     Each and every claim submitted to the Government subsequent to an API contains a false price or charge and was presented to a governmental customer in violation of the federal False Claims Act or analogous Plaintiff State's false claims act statutes.

40.      Every false statement made by Defendant either in the claim itself, or used by Defendant to get a false claim paid or approved by the Government, was made in violation of the False Claims Act and/or a related Plaintiff States' false claims act statutes.

41.     Each time Defendant negotiated and entered into a contract with the Government, Defendant knew, prior to entering into said contract, that it had no intent to abide

by the terms of that contract, but instead Defendant knew that it was going to impose an API. As a result, Defendant fraudulently induced the Government customers to enter into a contract with Defendant in violation of the False Claims Act and/or an analogous Plaintiff States' false claims act statutes.

42. Each time Defendant concealed or avoided its obligation to refund an overpayment to the Government, Defendant violated of the False Claims Act and/or an analogous Plaintiff States' false claims act statutes.

## VII. THE FALSE CLAIMS ACT

43. The False Claims Act, 31 U.S.C. §§ 3729 *et seq.*(the "FCA") prohibits the submission of false or fraudulent claims for payment to the United States or the making of false statements for the purpose of causing a false claim to be paid. The FCA provides that any person who knowingly submits, or causes to be submitted, false or fraudulent claims to the government for payment or approval is liable for a civil penalty of up to $11,000 for each claim, plus three times the amount of damages sustained by the government. The FCA empowers persons with information regarding false or fraudulent claims made to the government, "relators," to bring an action on behalf of the United States and to share in any recovery.

44. For violations occurring before May 20, 2009, the false claims provision of the FCA, at 31 U.S.C. § 3729(a)(1)(1986), provides in pertinent part that a person is liable to the United States government for each instance in which the person "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . [a] false or fraudulent claim for payment or approval."

45. For violations occurring on or after May 20, 2009, the false claims provision of the FCA, at 31 U.S.C. § 3729(a)(1)(A) (2009), as amended by the Fraud

Enforcement and Recovery Act of 2009 ("FERA"), provides in pertinent part that any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" shall be liable to the United States Government.

46. The false statements provision of the FCA, prior to the FERA amendments, provides that a person is liable to the United States Government for each instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2) (1986). As amended by FERA, the false statements provision of the FCA makes liable any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B) (2009).

47. The FCA defines the term "claim" to mean "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. . . ." 31 U.S.C. § 3729(b)(2)(A) (2009).

48. The FCA defines the terms "knowing" and "knowingly" to mean that a person, with respect to information: (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or (3) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b) (1986); 31 U.S.C. § 3729(b)(1)(A)

- 13 -

(2009). The FCA further provides that "no proof of specific intent to defraud" is required. 31

U.S.C. § 3729(b) (1986); 31 U.S.C. § 3729(b)(1)(B) (2009).

## FIRST CAUSE OF ACTION
### (31 U.S.C. § 3729(a)(1) (1986))

49.     Relator incorporates by reference paragraphs 1 through 48 of this

Complaint, as if set forth fully herein.

50.     With respect to claims submitted from April 28, 2002 to on or before May

20, 2009, Stericycle, through the use of its price escalation scheme has knowingly presented, or

caused to be presented, to an officer or employee of the United States Government, false and

fraudulent claims for payment and approval in violation of 31 U.S.C. § 3729(a)(1) (1986).

51.     As a result of this false and fraudulent conduct, the United States

Government was damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (31 U.S.C. § 3729(a)(2) (1986))

52.     Relator incorporates by reference paragraphs 1 through 51 of this

Complaint, as if set forth fully herein.

53.     With respect to claims submitted from April 28, 2002 to on or before May

20, 2009, Stericycle, through the use of its price escalation scheme has knowingly made, used, or

caused to be made and used, false records and statements to get false and fraudulent claims paid

and approved by the Government in violation of 31 U.S.C. § 3729(a)(2) (1986).

54.     As a result of this false and fraudulent conduct, the United States

Government was damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (31 U.S.C. § 3729(a) (7) (1986))

55.     Relator incorporates by reference paragraphs 1 through 54 of this Complaint, as if set forth fully herein.

56.     With respect to claims submitted from April 28, 2002 to on or before May 20, 2009, Stericycle, by knowingly overcharging Government accounts, and retaining these overpayments, knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729(a)(7) (1986).

57.     As a result of this false and fraudulent conduct, the United States Government was damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (31 U.S.C. § 3729(a)(1)(A) (2009))

58.     Relator incorporates by reference paragraphs 1 through 57 of this Complaint, as if set forth fully herein.

59.     With respect to claims submitted on or after May 20, 2009, Stericycle, through the use of the price escalation scheme has knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A). (2009).

60.     As a result of this false and fraudulent conduct, the United States Government was damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (31 U.S.C. § 3729(a)(1)(B) (2009))

61.     Relator incorporates by reference paragraphs 1 through 60 of this Complaint, as if set forth fully herein.

62.     With respect to claims submitted on or after May 20, 2009, Stericycle, through the use of the price escalation scheme has knowingly made, used, or caused to be made and used, false records and statements material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B). (2009).

63.     As a result of this false and fraudulent conduct, the United States Government was damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (31 U.S.C. § 3729(a)(1)(G)(2009))

64.     Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if set forth fully herein.

65.     With respect to claims submitted on or after May 20, 2009, Stericycle, by knowingly overcharging government accounts, and retaining these overpayments, knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

66.     As a result of this false and fraudulent conduct, the United States Government was damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
(California False Claims Act, Cal. Govt. Code § 12650 *et seq.* (1987))

67.     Relator incorporates by reference paragraphs 1 through 66 of this Complaint, as if set forth fully herein.

68.     For claims presented from April 28, 2002 to on or before December 31, 2009, Stericycle, through the aforementioned price escalation scheme (a) knowingly presented, or caused to be presented, false and fraudulent claims for payment to officers of the State of California and/or its political subdivisions; (b) knowingly made, used, and caused to be made and used, false records and statements to get false and fraudulent claims paid and approved by the State of California and/or its political subdivisions; and (c) by knowingly overcharging accounts of the State of California and/or its political subdivisions, and retaining these overpayments, knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State of California and/or its political subdivisions, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of California and/or its political subdivisions.

69.     As a result of this false and fraudulent conduct, the State of California and/or its political subdivisions were damaged in amounts to be determined at trial.

## EIGHTH CAUSE OF ACTION
(California False Claims Act, Cal. Govt. Code § 12650 *et seq.*(2010))

70.     Relator incorporates by reference paragraphs 1 through 69 of this Complaint, as if set forth fully herein.

71.     For claims presented on or after January 1, 2010, Stericycle, through the aforementioned price escalation scheme (a) knowingly presented, or caused to be presented, false

and fraudulent claims for payment or approval by the State of California and/or its political

subdivisions; or (b) knowingly made, used, or caused to be made and used, false records and

statements material to a false or fraudulent claim in violation of and (c) by knowingly

overcharging accounts of the State of California and/or its political subdivisions, and retaining

these overpayments, knowingly made, used, or caused to be made or used a false record or

statement material to an obligation to pay or transmit money or property to the State of

California and/or its political subdivisions, or knowingly concealed or knowingly and improperly

avoided, or decreased an obligation to pay or transmit money or property to the State of

California and/or its political subdivisions.

72.     As a result of this false and fraudulent conduct, the State of California

and/or its political subdivisions were damaged in amounts to be determined at trial.

### NINTH CAUSE OF ACTION
(Delaware False Claims & False Reporting Act, 6 Del. C. § 1201 *et seq.*))

73.     Relator incorporates by reference paragraphs 1 through 72 of this

Complaint, as if set forth fully herein.

74.     Stericycle, through the use of a price escalation scheme has (a) knowingly

presented, or caused to be presented, to an officer or employee of the Government, as defined by

the Delaware False Claims Act, 6 Del. C. § 1202(2), false and fraudulent claims for payment and

approval; (b) knowingly made, used, or caused to be made and used, false records and statements

to get false and fraudulent claims paid and approved by the Government; and (c) by knowingly

overcharging Government accounts, and retaining these overpayments, knowingly made, used,

or caused to be made or used, a false record or statement material to an obligation to pay or

transmit money or property to the Government, or knowingly concealed or knowingly and

improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

75.     As a result of this false and fraudulent conduct, the State of Delaware and its political subdivisions were damaged in amounts to be determined at trial.

**TENTH CAUSE OF ACTION**
(District of Columbia Procurement Reform Amendment Act,
D.C. Code Ann. § 1-1188.13 *et seq.*)

76.     Relator incorporates by reference paragraphs 1 through 75 of this Complaint, as if set forth fully herein.

77.     Stericycle, through the use of a price escalation scheme has (a) knowingly presented, or caused to be presented, to an officer or employee of the District of Columbia, false and fraudulent claims for payment and approval; (b) knowingly made, used, or caused to be made and used, false records and statements to get false and fraudulent claims paid and approved by the District of Columbia; and (c) by knowingly overcharging District of Columbia accounts, and retaining these overpayments, knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the District of Columbia, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the District of Columbia.

78.     As a result of this false and fraudulent conduct, the District of Columbia was damaged in an amount to be determined at trial.

## **ELEVENTH CAUSE OF ACTION**
### (Florida False Claims Act, Fla. Stat. Ann. § 68.081 *et seq.*)

79.    Relator incorporates by reference paragraphs 1 through 78 of this Complaint, as if set forth fully herein.

80.    Stericycle, through the use of a price escalation scheme has (a) knowingly presented, or caused to be presented, to an officer or employee of an agency of the State of Florida, false and fraudulent claims for payment and approval; (b) knowingly made, used, or caused to be made and used, false records and statements to get false and fraudulent claims paid and approved by an agency of the State of Florida;; and (c) by knowingly overcharging accounts of agencies of the State of Florida, and retaining these overpayments, knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to agencies of the State of Florida, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to agencies of the State of Florida.

81.    As a result of this false and fraudulent conduct, the State of Florida was damaged in an amount to be determined at trial.

## **TWELFTH CAUSE OF ACTION**
### (Illinois False Claims Act, 740 Ill. Comp. Stat. § 175/1 *et seq.* (2000))

82.    Relator incorporates by reference paragraphs 1 through 81 of this Complaint, as if set forth fully herein.

83.    For claims presented from April 28, 2002 to on or before July 27, 2010, Stericycle, through the aforementioned price escalation scheme (a) knowingly presented, or caused to be presented, false and fraudulent claims for payment to officers of the State, as that term is defined by the Illinois False Claims Act, 740 Ill. Comp. Stat. § 175/2(a);  (b) knowingly

made, used, and caused to be made and used, false records and statements to get false and fraudulent claims paid and approved by the State; and (c) by knowingly overcharging State accounts, and retaining these overpayments, knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State.

84.     As a result of this false and fraudulent conduct, the State has been were damaged in amounts to be determined at trial.

## THIRTEENTH CAUSE OF ACTION
(Illinois False Claims Act, 740 Ill. Comp. Stat. § 175/1 *et seq.* (2010))

85.     Relator incorporates by reference paragraphs 1 through 84 of this Complaint, as if set forth fully herein.

86.     For claims presented on or after July 27, 2010, Stericycle, through the aforementioned price escalation scheme (a) knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval by the State as that term is defined by the Illinois False Claims Act,740 Ill. Comp. Stat. § 175/2(a); or (b) knowingly made, used, or caused to be made and used, false records or statements material to false or fraudulent claims; and (c) by knowingly overcharging State accounts, and retaining these overpayments,   knowingly made or used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly concealed or knowingly and improperly avoided, or decreased an obligation to pay or transmit money or property to the State.

87.     As a result of this false and fraudulent conduct, the State of Illinois has been damaged in amounts to be determined at trial.

## FOURTEENTH CAUSE OF ACTION
(Indiana False Claims and Whistleblower Protection Act,
Ind. Code Ann. § 5-11-5.5-1 *et seq*. (2005))

88.     Relator incorporates by reference paragraphs 1 through 87 of this Complaint, as if set forth fully herein.

89.     For claims presented on or after January 1, 2005, Stericycle, through the aforementioned price escalation scheme (a) knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval by the State of Indiana; or (b) knowingly made or used, false records and statements material to obtain payment or approval of a false claim from the State of Indiana and (c) by knowingly overcharging State accounts, and retaining these overpayments, knowingly made, used, or caused to be made or used a false record or statement to avoid an obligation to pay or transmit property to the State of Indiana.

90.     As a result of this false and fraudulent conduct, the State of Indiana in amounts to be determined at trial.

## FIFTEENTH CAUSE OF ACTION
(Massachusetts False Claims Law, Mass. Gen. Laws ch. 12 § 5 *et seq*. (2000))

91.     Relator incorporates by reference paragraphs 1 through 90 of this Complaint, as if set forth fully herein.

92.     Stericycle, through the aforementioned price escalation scheme (a) knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval by the Commonwealth of Massachusetts or its political subdivisions; or (b) knowingly made, used, or caused to be made and used, false records or statements to obtain payment or approval of a claim by the Commonwealth or any political subdivision thereof; and (c) by knowingly overcharging Commonwealth accounts, and retaining these overpayments, knowingly made, used, or caused to be made or used a false record or to conceal, avoid, or decrease an

obligation to pay or to transmit money or property to the commonwealth or political subdivision thereof.

93.     As a result of this false and fraudulent conduct, the Commonwealth of Massachusetts or its political subdivisions in amounts to be determined at trial.

**SIXTEENTH CAUSE OF ACTION**
(Nevada False Claims Act, Nev. Rev. Stat. Ann. § 357.010 *et seq.*(2000))

94.     Relator incorporates by reference paragraphs 1 through 93 of this Complaint, as if set forth fully herein.

95.     Stericycle, through the aforementioned price escalation scheme (a) knowingly presented, or caused to be presented, false claims for payment or approval by the State of Nevada and/or its political subdivisions;  (b) knowingly made, used, or caused to be made or used, false records and statements to obtain payment or approval of a false claim by the State of Nevada and/or its political subdivisions; and (c) by knowingly overcharging accounts of the State of Nevada and/or its political subdivisions, and retaining these overpayments, knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State of Nevada or its political subdivisions.

96.     As results of this false and fraudulent conduct, the State of Nevada and/or its political subdivisions have been were damaged in amounts to be determined at trial.

## SEVENTEENTH CAUSE OF ACTION
### (New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C)

97.     Relator incorporates by reference paragraphs 1 through 96 of this Complaint, as if set forth fully herein.

98.     Stericycle, through the aforementioned price escalation scheme (a) knowingly presented or caused to be presented to an employee, officer or agent of the State of New Jersey, false or fraudulent claims for payment or approval; or (b) knowingly made, used, or caused to be made or used false records or statements to get false or fraudulent claims paid or approved by the State of New Jersey; and

(c) by knowingly overcharging State of New Jersey accounts, and retaining these overpayments, knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of New Jersey.

99.     As a result of this false and fraudulent conduct, the State of New Jersey in amounts to be determined at trial.

## EIGHTEENTH CAUSE OF ACTION
### (North Carolina False Claims Act,
### 52 N.C. General Statutes, § 1-605-618 (2009))

100.     Relator incorporates by reference paragraphs 1 through 99 of this Complaint, as if set forth fully herein.

101.     For claims presented on or after January 1, 2009, Stericycle, through the aforementioned price escalation scheme (a) knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval by the State of North Carolina; or (b) knowingly made, used, or caused to be made and used, false records or statements material to false or fraudulent claims; and (c) by knowingly overcharging State accounts, and retaining these overpayments, knowingly made or used, or caused to be made or used a false record or statement

material to an obligation to pay or transmit money or property to the State of North Carolina, or knowingly concealed or knowingly and improperly avoided, or decreased an obligation to pay or transmit money or property to the State of North Carolina.

102.    As a result of this false and fraudulent conduct, the State of North Carolina has been damaged in amounts to be determined at trial.

## NINETEENTH CAUSE OF ACTION
(Rhode Island False Claims Act, R.I. General Laws § 9-1.1)

103.    Relator incorporates by reference paragraphs 1 through 102 of this Complaint, as if set forth fully herein.

104.    For claims presented on or after January 1, 2008, Stericycle, through the aforementioned price escalation scheme (a) knowingly presented, or caused to be presented, to an officer or employee of the State of Rhode Island as that term is defined by the Rhode Island False Claims Act, false or fraudulent claims for payment or approval; or (b) knowingly made, used, or caused to be made and used, false records or statements to get false or fraudulent claims paid or approved by the state of Rhode Island;; and (c) by knowingly overcharging State accounts, and retaining these overpayments, knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State of Rhode Island.

105.    As a result of this false and fraudulent conduct, the State of Rhode Island has been damaged in amounts to be determined at trial.

## TWENTIETH CAUSE OF ACTION
(Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101 *et seq.*)

106. Relator incorporates by reference paragraphs 1 through 105 of this Complaint, as if set forth fully herein.

107. Stericycle, through the aforementioned price escalation scheme (a) knowingly presented, or caused to be presented, to an officer or employee of the State of Tennessee and/or political subdivisions thereof, false or fraudulent claims for payment or approval; or (b) knowingly made, used, or caused to be made and used, false records or statements to get false claims paid or approved by the State of Tennessee and/or political subdivisions thereof; and (c) by knowingly overcharging accounts of the State of Tennessee and/or political subdivisions thereof, and retaining these overpayments, knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State of Tennessee and/or political subdivisions thereof.

108. As a result of this false and fraudulent conduct, the the State of Tennessee and/or political subdivisions thereof have been damaged in amounts to be determined at trial.

## TWENTY-FIRST CAUSE OF ACTION
(Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.*)

109. Relator incorporates by reference paragraphs 1 through 108 of this Complaint, as if set forth fully herein.

110. Stericycle, through the aforementioned price escalation scheme (a) knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval by the Commonwealth of Virginia; (b) knowingly made, used, and caused to be made and used, false records and statements material to false or fraudulent claims; and (c) knowingly

made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Commonwealth of Virginia or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Commonwealth.

111. As a result of this false and fraudulent conduct, the Commonwealth of Virginia and of political subdivisions thereof have been damaged in amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Relator, on behalf of herself individually, and acting on behalf of, and in the name, of the United States and the Plaintiff States, respectively, demands and prays that judgment be entered against the Defendant as follows:

a. That the Defendant shall be ordered to cease and desist from violating the False Claims Act, 31 U.S.C. §§ 3729-3732 and the respective Plaintiff State's False Claims Acts.

b. On the First, Second, Third, Fourth, Fifth, and Sixth Causes of Action under the False Claims Act, judgment shall be entered against Defendant in the amount of three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of $11,000.00 for each act in violation of the False Claims Act, as provided by 31 U.S.C. § 3729(a), with interest.

c. On the Seventh through Twenty-First Causes of Action under the respective Plaintiff States' False Claims Acts, judgment shall be entered against Defendant in the amount of three times the amount of damages each Plaintiff State has sustained because of Defendant's actions, plus corresponding statutory civil penalties, with interest.

d.     That Relator shall be awarded the maximum amount available pursuant to 31 U.S.C. § 3730(d) of the False Claims Act, namely 30 percent of the proceeds of the action or the settlement of the claim.

e.     That Relator shall be awarded the maximum amount available pursuant to each of the respective Plaintiff States' False Claims Act, namely, 30 percent (50 percent for California) of the proceeds of the action or settlement of the claim.

f.     That Relator shall be awarded all reasonable expenses that were necessarily incurred in prosecution of this action, plus all reasonable attorneys' fees and costs, as provided by the False Claims Act, 31 U.S.C. § 3730(d), and any applicable Plaintiff States' law.

g.     And, such other relief shall be granted in the favor of the United States, the respective States, and the Relator as this Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands trial by jury.

Dated: July 23, 2013

Respectfully Submitted,

_____/s/ James T. Ratner_____
James T. Ratner
Attorney *Pro Hac Vice*
P.O. Box 1035
Woodstock, NY 12498
Tel.:  (845) 688-5222
Email:  jamestratner@yahoo.com

Michael C. Rosenblat
Michael C. Rosenblat, P.C.
707 Skokie Boulevard, Suite 600
Northbrook, Illinois  60062-2841
Tel.:  (847) 480-2390
Email:  mike@rosenblatlaw.com

David A. Koenigsberg
Menz Bonner Komar & Koenigsberg LLP
444 Madison Avenue, 39th Floor
New York, New York 10022
Tel.:  (212) 223-2100
Email:  dkoenigsberg@mbkklaw.com
Not admitted in Illinois

*Attorneys for Relator Jennifer Perez*

**EXHIBIT 1**

**Stericycle** ∘

Account/ Site # ____

### STERI•SAFE℠ SERVICE AGREEMENT

| Service Address | | Billing Address (If Different) | |
|---|---|---|---|
| Name: | Department of Vetreran's Affairs | Name: | |
| Address 1: | 551 Tucker St | Address 1: | PO Box 149971 |
| Address 2: | | Address 2: | |
| City/State/Zip: | Craig, CO 81625 | City/State/Zip: | Austin, TX 78714-8971 |
| E-Mail: | | E-Mail: | |
| Phone: | (970) 269-2604 ext.   Fax: (970) 244-2292 | Phone: | (___) ___-____ ext. ___  Fax (___) ___-____ |
| Contact: | Denise Beren  Title:  Dave Newman | Contact: | Title: |

The parties agree as follows:
1. The Effective date of this agreement is __/__/2007.
2. Stericycle shall remove and dispose of Customer's Regulated Medical Waste (Hazardous Waste as applicable) subject to the terms and conditions set forth below.
3. Stericycle will provide additional compliance services for the prices applicable to the service program level Customer has selected below.

### Services to be Provided

| STERI-SAFE | *Additional Waste Services | | | |
|---|---|---|---|---|
| Steri-Safe Program Level **Select** | Category | Included w/ SS | Trans. Charge | $/Cont |
| Payment Schedule: Billed **Quarterly** at the rate of | Dental Waste | ☐ YES | _____ | _____ |
| **$77.11** (Per Month) | Pharm | ☐ YES | _____ | _____ |
| * Monthly payment schedule only available for selected programs with pickup frequency greater than 13 pickups per year. | Chemo/Path | ☐ YES | _____ | _____ |
| Service Frequency    **4 (Every 12 Weeks)** | | | | |
| Additional Pick Up Charge **$94.00** | Medical Waste Container Size _____ | | | |
| (for steps in addition to your regular schedule) | Each Additional Container Charge $ _____ | | | |
| Maximum Medical Waste Containers per Pickup **4** | | | | |
| Medical Waste Container Size  **Medium** | * Not available in all areas. | | | |
| Each Additional Container Charge $ **35.00** | | | | |

By signing below I acknowledge that I am the Customer's authorized officer or agent and that I have the authority to bind Customer to this Agreement.
Customer agrees to be bound by the terms and conditions that appear on the second page hereof and comply with Stericycle's Waste Acceptance Policy, both of which are integral parts of this Agreement.

CUSTOMER: X_____ PLEASE PRINT:_____  Title _____  Date: ____
STERICYCLE: X_____ PLEASE PRINT: **Shelaigh Davlin**  Title **Compliance Account Rep**  Date: ____

| STERICYCLE USE ONLY |
|---|
| Type of Agreement **New**   Term of agreement **36** Months |
| Tax Exempt: ☐ YES  ☐ NO  If YES, ID# _____ (copy must accompany paperwork)      Promo Code _____ |
| Purchase Order (if applicable) # _____ From __/__/__ to __/__/__ |
| Segment Code **SEG07**  Affiliation Code _____      SFDC Record # 635598 |
| Routing Information (Operations Department): |
| Med Waste Container Code _____  Qty ____  Special Waste Container Code _____  Qty ____  None (charge only) ☐ |
| Service Area ____  Route # _____  Container Setup Date __/__/2007  First Pickup Date (Cycle Begin Date) __/__/2007 |
| Day of Service: ☐ Mon  ☐ Tues  ☐ Wed  ☐ Thurs  ☐ Fri  Service Hours _____ |
| Routing Comments _____ |

Stericycle, Inc. • www.stericycle.com • 2333 Waukegan Rd. Ste. 200, Bannockburn, IL • P (847) 945-6566 • F (800) 419-1528
The offer Will Expire on:10/31/2007

⑤

1/31/2006                                                                                                    013106NSS

Perez - 00257

Initials_____
Account/Site #_____

## STERI•SAFE℠ TERMS AND CONDITIONS

1. Regulated Medical Waste Services (a) Upon the terms and conditions contained herein, Stericycle, Inc. shall collect, transport, treat and dispose of all Regulated Medical Waste (except Non-conforming Waste) generated by Customer during the term of this Agreement. Stericycle employees may refuse containers that are determined to be Non-conforming Waste. (b) Title to Regulated Medical Waste collected from Customer shall transfer and vest in Stericycle at the time it is loaded into Stericycle's vehicle. Customer shall have title to Regulated Medical Waste at all prior times. Customer shall hold title to any Non-Conforming Waste at all times, whether refused for collection or returned to the customer for proper disposal after collection...

2. Term and Pricing Subject to the provisions below, the term ("Term") of this Agreement shall be Thirty-Six (36) months from the Effective Date...

3. Billing Stericycle shall provide Customer with monthly, quarterly or annual invoices that are due upon receipt...

4. Surcharges Stericycle may also impose a surcharge in the event that Stericycle attempts to pick up waste at a Customer location...

5. Liability for Equipment Customer shall have the care, custody and control of containers and other equipment owned by Stericycle and placed at Customer's premises...

6. Indemnification (a) Stericycle shall indemnify and hold Customer harmless from any liabilities arising from the gross negligence or willful misconduct of Stericycle...

7. Compliance Materials To the extent that Stericycle provides Customer with any electronic or printed materials (the "Compliance Materials") it provides these materials subject to a limited license...

8. Compliance Laws and Waiver Stericycle hereby agrees to obey General Liability, Automobile Liability, and Workman's Compensation Insurance...

9. Exclusivity Customer agrees to use no other Regulated Medical Waste disposal service or method during the Term of this Agreement and any Extension Term...

10. Excuse of Performance Stericycle shall not be responsible if its performance of this Agreement is interrupted or delayed...

11. Independent Contractor Stericycle's relationship with Customer pursuant hereto is that of an independent contractor...

12. Amendment and Waiver Changes in the types, size and amount of equipment or the frequency of service may be mutually agreed to orally or in writing...

13. Savings Clause In case any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable...

14. Entire Agreement This Agreement (including any attachments, exhibits and amendments made in accordance with Paragraph 12) constitutes the entire understanding and agreement of the parties...

15. Governing Law This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without regard to the conflicts of laws or rules of any jurisdiction.

16. Notices All required notices, or those which the parties may desire to give under this Agreement shall be in writing and sent to the parties' addresses set forth above.

17. Originals A copy or facsimile of this Agreement shall be as effective as an original.

1/31/2006                           013106NSS

Perez - 00258

Initials_____



*Experts in Infection Control and*
*Healthcare Compliance Services*

## Waste Acceptance Policy

### INTRODUCTION

Stericycle policy requires compliance with all applicable regulations regarding the collection, transportation and treatment of regulated medical waste. Federal Department of Transportation (DOT) Regulations require the generator of regulated medical waste to certify that the packaging and documentation of transported regulated medical waste complies with DOT regulations regarding waste classification, packaging, labeling and shipping documentation. To ensure that neither Stericycle nor the generator of regulated medical waste violates applicable regulations, it is imperative that all parties understand the rules regarding proper identification, classification, segregation and packaging of regulated medical waste. The purpose of this policy is to summarize the minimum requirements for preparing your medical waste for collection, transportation and treatment. Additional facility or state-specific waste acceptance policies may apply based on permit specifications. Please contact your local representative for further information. You may also call (866) 783-7422.

### REGULATED MEDICAL WASTE

Stericycle accepts medical waste generated in a broad range of medical, diagnostic, therapeutic and research activities. The term "medical waste" includes biohazardous, biomedical, infectious or regulated medical waste as defined under federal, state or local laws, rules, regulations and guidelines. Except as defined by specific state regulations, this excludes RCRA pharmaceuticals, bulk chemotherapy, waste containing mercury or other heavy metals, batteries of any type, non-infectious dental waste, chemicals such as solvents, reagents, corrosives or ignitable materials classified as hazardous waste under Federal and State EPA Regulations. In addition, Stericycle cannot accept bulk liquids, radioactive materials, fetal remains, or human torsos. Stericycle cannot accept these excluded materials packaged as regulated medical waste. Separate protocol and packaging requirements apply for the disposal of non-hazardous pharmaceuticals. Hazardous waste transportation services may be offered in certain geographical locations, under separate contract. Please contact your local representative for details and packaging specifications.

### WASTE SEGREGATION AND PACKAGING

The generator is solely responsible for properly segregating, packaging and labeling of regulated medical waste. Proper segregation and packaging reduces the potential for accidental release of the contents and exposure to employees and the general public. DOT regulations require (49 CFR 173.197) that all packages of regulated medical waste be prepared for transport in containers meeting the following requirements: 1) rigid; 2) leak resistant; 3) impervious to moisture; 4) of sufficient strength to prevent tearing or bursting under normal conditions of use and handling; 5) sealed to prevent leakage during transport; and 6) puncture resistant for sharps. All regulated medical waste must be accompanied by a properly completed shipping document (See 49 CFR 172.202).

### MANAGEMENT OF NON-CONFORMING WASTE

As required by regulation and company policy, Stericycle employees may refuse containers that are non-conforming because of their contents or are improperly packaged, leaking, damaged or likely to create a risk of exposure to employees or the general public. Any non-conforming waste identified in route to or at a Stericycle location may be returned to the generator for proper packaging or disposal. Proper segregation and packaging is essential to ensure compliant and safe handling, collection, transportation and treatment of regulated medical waste. 

1/31/2006                                        013106NSS

Perez – 00259

Initials_____

## STERICYCLE WASTE ACCEPTANCE POLICY CHECKLIST

### Accepted Waste:

√  **Sharps**
   Needles and syringes, scalpel blades, glass pipettes, slides, etc.

√  **Regulated Medical Waste**
   A waste or reusable material known to contain or suspected of containing an infectious substance in Risk Group 2 or 3 and generated in the diagnosis, treatment, or immunization of human beings or animals; research on the diagnosis, treatment or immunization of human beings or animals; or the production or testing of biological products.

### Accepted Waste Which Must Be Identified And Segregated For Incineration

√  **Trace- Chemotherapy Contaminated Waste**
   RCRA Empty drug vials, syringes and needles, spill kits, IV tubing and bags, contaminated gloves and gowns, and related materials as defined in applicable laws, rules, regulations or guidelines

√  **Pathological Waste**
   Human or animal body parts, organs, tissues and surgical specimen (decanted of formaldehyde, formalin or other preservatives)

√  **Non-RCRA Pharmaceuticals**
   Must be characterized and certified as non-RCRA hazardous material by the generator. *Consult Stericycle Representative for specific requirements*

### Waste NOT Accepted By Stericycle

⊗  **RCRA Hazardous Pharmaceutical Waste**
⊗  **Chemicals**
    Formaldehyde, formalin, acids, alcohol, waste oil, solvents, reagents, fixer developer
⊗  **Hazardous Waste**
    Drums or other containers with a hazard warning symbol, batteries and other heavy metals
⊗  **Radioactive Waste**
    Any container with a radioactivity level that exceeds regulatory or permitted limits; lead-containing materials
⊗  **Complete Human Remains**
    Cadavers, complete torsos and fetal remains
⊗  **Bulk Chemotherapy Waste**
⊗  **Compressed Gas Cylinders, Canisters, Inhalers and Aerosol Cans**
⊗  **Any Mercury Containing Material or Devices:**
    Any mercury thermometers, Sphygmomanometers or lab or medical devices
⊗  **Mercury-Containing Dental Waste**
    Non-contact and contact amalgam and products, chairside traps, amalgam sludge or vacuum pump filters, extracted teeth with mercury fillings and empty amalgam capsules

Additional waste acceptance policies may apply based on state or permit specific requirements. Hazardous waste transportation services may be offered in certain geographical locations, under separate contract. Please refer to your local Stericycle Representative for additional information. For additional information on container and labeling requirements contact our Stericycle Customer Service Department at (866) 783-7422.



1/31/2006                                                                                          013106NSS

Perez – 00260

**APPROVED**
By Michelle Malone at 4:59 pm, Jan 30, 2008

AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT      PAGE 1   OF PAGES 2

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| 0006 | 1/1/2008 | | |

| 6. ISSUED BY | CODE | 7. ADMINISTERED BY (if other than Item 6) | CODE |
|---|---|---|---|
| Department of Veterans Affairs Medical Center Contracting (90C) 2121 North Avenue Grand Junction CO 81501 | | | |

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

STERICYCLE, INC.

6355 COLORADO BLVD

DACONO CO 805149419

[X] 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

[X] 10A. MODIFICATION OF CONTRACT/ORDER NO.
V575P-1704

10B. DATED (SEE ITEM 13)
10-21-2004

### 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[ ] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [ ] is extended, [ ] is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR AC-KNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)    3680162.001(.01)   FCP 6041 INCREASE: $7017.67

### 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (X) | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT FAR 52.217-7 OPTION FOR INCREASED QUANTITY--SEPARATELY PRICE |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor [ ] is not, [X] is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
REFERENCE CONTRACT V575P-1704 FOR "MEDICAL WASTE REMOVAL SERVICES". CONTRACT IS HEREBY AMENDED AS FOLLOWS:
OPTION YEAR IV - FIFTH YEAR IS HEREBY EXERCISED (see attached).
ADD THE MONTROSE CLINIC FOR THIS YEAR   12 MO $332.77   TOTAL $3993.24
ADD THE CRAIG CLINIC FROM 1/16/2008 TO 9/30/2008   9 MO $77.11   TOTAL $693.99
THE ABOVE INCREASES THE ESTIMATED TOTAL TO $7017.67
ALL OTHER TERMS AND CONDITIONS SHALL REMAIN THE SAME.

(9)

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| | DENISE BOREN    07-69 Contracting Officer |
| 15B. CONTRACTOR/OFFEROR _Shaleigh Devlin_ (Signature of person authorized to sign) | 15C. DATE SIGNED 1/30/08 | 16B. UNITED STATES OF AMERICA BY _Denise Boren_ (Signature of Contracting Officer) | 16C. DATE SIGNED 1/30/08 |

NSN 7540-01-152-8070
PREVIOUS EDITION NOT USABLE

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA - FAR (48 CFR) 53.243

Perez - 00261

ISSUING OFFICE:
Dept. of Veterans Affairs Medical Center
2121 NORTH AVE
GRAND JUNCTION, CO 81501

REQUESTING SERVICE:
EMS(137)

DEL. TO: BJ CRAIG MONTROSE

VENDOR:

STERICYCLE INC
5355 COLORADO BOULEVARD
DACONO CO 80514

ACCT # 6025168
800 633 9278   FAX: 303 833 3075
FMS Vendor Code: 363640402

SHIP TO:

WAREHOUSE C87040
V.A. Medical Center
VA MEDICAL CENTER (575)
2121 NORTH AVE, BLDG 7
GRAND JUNCTION, CO 81501

DELIVERY HOURS:
8AM-4PM MST MON-FRI

| FOB POINT: DESTINATION | PROPOSAL: SHALAIGH DAVLIN | MAIL INVOICE TO: |
|---|---|---|
| GOV'T BL #: | | FISCAL SERVICE (04) |
| DELIVERY ORDER | | PO BOX 149971 |
| DELIVER ON/BEFORE 9/30/2008 | CONTRACT: | AUSTIN, TX 78714-8971 |
| DISCOUNT TERM: NET30 | V575P-1704 | |
| SHIP VIA: | | |

| ITEM | DESCRIPTION | QTY | UNIT | UNIT COST | TOTAL COST |
|---|---|---|---|---|---|
| 1 | Provide services to dispose of waste, which is defined by federal register vol. 50 No. 235, 12-6-91, section 1910.1030. Services to be provided in accordance with all federal, state and local regulations. The different types of waste which will be picked up chemo-waste, pathological, sharps and medical waste which will be picked-up once every two weeks. Contractor needs to furnish this office with permits:Hazard transportation and landfill certificates. Certificate of insurance: 10, 32, and 44 gallon barrels (will accept variations in sizes) with liners to put the medical waste in. All barrels & liners will be labeled according to all federal, state and local regulations. Contract period is from October 1, 2007 through September 30, 2008 Estimated amount of waste is 600 lbs per two week period | 16500 | LB | 0.49 | 8085.00 |

WASTE MANIFEST: GENERATOR COPY
WILL STAY ON STATION. RETURN TO
GENERATOR COPY WILL BE RETURNED
TO GENERATOR AFTER TREATMENT
FACILITY HAS SIGNED
BOC: 2580    FMS LINE: 001    CONTRACT: V575P-1704

Perez - 00262

| ITEM | DESCRIPTION | QTY | UNIT | UNIT COST | TOTAL COST | |
|------|-------------|-----|------|-----------|------------|---|
| 2 | Medical waste removal from CBOC ever two weeks | 12 | MO | 332.77 | 3993.24 | |
| | LOCATED AT 4 HILLCREST PLAZA WAY, MONTROSE, CO 81401 | | | | | |
| | PICKED UP EVERY TWO WEEKS BOC: 2580     FMS LINE: 001     CONTRACT: V575P-1704 | | | | | |
| 3 | removal medical waste from Craig CBOC quarterly per month | 9 | MO | 77.11 | 693.99 | |
| | LOCATED AT 551 TUCKER STREET, CRAIG, CO 81625 | | | | | |
| | TO BE BILLED MONTHLY FOR THE PERIOD 1/1/2008 THROUGH 9/30/2008 TO BE PICKED UP QUARTERLY EVERY 12 WEEKS. BOC: 2580     FMS LINE: 001     CONTRACT: V575P-1704 | | | | | |

*** ESTIMATED PURCHASE ORDER ***    Medical waste removal

V.A. TRANSACTION NUMBERS:
        575-08-1-6041-0009

TOTALS CARRIED FORWARD TO FIRST SHEET.     4687.23

90-2139-ADP, MAY 1985

Perez - 00263

```
AUTHORITY FOR PURCHASE       P.O. NO.     PO DATE      EST. TOTAL: 12772.23
      MCC                    575-C87040   10/1/2007
CONTRACTING OFFICER                 DATE SIGNED      PHONE            FAX
/ES/Denise Boren                    1/30/2008@13:54  970 263 5004    970 244 7721
E-MAIL: denise.boren@med.va.gov
```

*Denise Boren* (signature)

```
      FUND CERTIFICATION: The supplies/services listed on this request are properly
      chargeable to the following allotments, the available balances of which are
      sufficient to cover the cost thereof, and funds have been obligated.
APPROPRIATION: 3660162-6041        OBLIGATED BY: /ES/JAMES J CZARNOWSKIDATE: 1/30/2008
COST CENTER: 856400                BOC1: 2580    AMOUNT1:     12772.23  FMS LINE: 601
SOURCE CODE: SUPPLY-6  FISCAL-3
FCP/PRJ: 010056100
```

90-2138-7-ADP, JAN 1984

Perez - 00264

## CERTIFICATE OF SERVICE

I, Michael C. Rosenblat, an attorney, certify that I caused copies of the foregoing **Plaintiff-Relator's Second Amended Complaint**, to be served pursuant to ECF as to Filing Users and via electronic delivery or U.S. Mail, proper postage prepaid, to the following individual.

Rachel Coles
Deputy Attorney General
Corporate Fraud Section
1300 I Street
Sacramento, CA 95814
Rachel.coles@doj.ca.gov

Elio Battista
Deputy Attorney General
Delaware Department of Justice
820 N. French street
Wilmington, Delaware 19801
Elio.Battista@state.de.us

William Foster
Russell Kent
Complex Civil Enforcement Bureau
The Capitol PL-01
Tallahassee, Florida 32399-1050
William.Foster@myfloridalegal.com
Russell.Kent@myfloridalegal.com

Harpreet Khera
Assistant Attorney General
Special Litigation Bureau
100 W. Randolph St., 13th Floor
Chicago, IL 60601
hkhera@atg.state.il.us

Steve Hunt
Supervising Deputy Attorney General
Medicaid Fraud Control Unit
8005 Castleway Drive
Indianapolis, Indiana 46250
Steven.Hunt@atg.in.gov

Eric M. Gold
Assistant Attorney General
Health Care Division
Office of the Attorney General
One Ashburton Place
Boston, MA 02108-1598
eric.gold@state.ma.us

Catherine Cortez Masto, Attorney General
Nevada Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717

Jeffrey Cahill
Medicaid Fraud Control Unit
33 Capitol Street
Concord, NH 03301

Hon. Paula T. Dow
Attorney General State of New Jersey
PO Box 080
Trenton, NJ 08625

Nicholas Suplina
Assistant Attorney General
Taxpayer Protection Bureau
New York Office of the Attorney General
120 Broadway, 25th Floor
New York, New York 10271-0332
Nicholas.Suplina@ag.ny.gov

F. Edward Kirby, Jr.
Assistant Attorney General
3824 Barrett Drive
Raleigh, NC 27609
FKirby@ncdoj.gov

Hon. Patrick C. Lynch
Attorney General State of Rhode Island
150 South Main St.
Providence, RI 02903

Lyndsay F. Sanders
Senior Counsel
Consumer Advocate and Protection Division
P.O. Box 20207
Nashville, TN 37202
Lyndsay.Sanders@ag.tn.gov

Guy Horsley, Esq.
Special Assistant Attorney General
900 East Main Street
Richmond, VA  23219

Hon.  Peter Nickles
Attorney General District of Columbia
441 Fourth St, NW, Suite 1145 S
Washington, DC 20001


s/ Michael C. Rosenblat